[Cite as *State v. McGowan*, 2011-Ohio-6166.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96608

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY A. McGOWAN

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART,**
**AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545227

**BEFORE:**   E. Gallagher, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   December 1, 2011

**ATTORNEY FOR APPELLANT**

Robert A. Gaffney
75 Public Square
Suite 714
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:   Andrew Rogalski
Norman Schroth
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

{¶ 1}  Defendant-appellant Larry McGowan appeals convictions entered in the Cuyahoga County Court of Common Pleas.   Appellant argues that (1) the trial court improperly denied his motion in limine, (2) the state of Ohio presented insufficient evidence to support his convictions, and (3) his convictions are against the manifest weight of the evidence.   For the following reasons, we affirm in part and reverse in part.

{¶ 2}  Appellant was indicted on December 21, 2010 and charged with burglary in violation of R.C. 2911.12(A)(1) (Count 1), theft of property valued at $500 or more and less than $5,000 in violation of R.C. 2913.02(A)(1) (Count 2), theft of a credit card   in

violation of R.C. 2913.02(A)(1) and 2913.71 with the victim being an elderly person (Count 3), and possessing criminal tools in violation of R.C. 2923.24(A) (Count 4). Appellant pled not guilty at arraignment and the case proceeded to a bench trial on March 1, 2011.

{¶ 3} It was the state's evidence at trial that in the early morning hours of December 15, 2010, Cynthia Lundeen was sleeping in the first-floor office of her home at 2380 Overlook Road, Cleveland Heights, in Cuyahoga County. Lundeen awoke to find an intruder in her home. The intruder was wearing a light-tan jacket, a blue knit cap, and blue gloves. The intruder had Lundeen's purse in his possession and left the home before she saw his face. Lundeen testified that in addition to her purse and its contents, two chiffon scarves and a VHS tape were taken from her home.

{¶ 4} Lundeen called 911 and officers responded to the scene in less than five minutes. Lundeen's home is situated at the corner of Overlook and Edgehill. Cleveland Heights police officer Gregory Pitts set up a perimeter in the area at approximately 2:00 a.m. Officer Pitts observed a male in a tan coat walk from a backyard on Edgehill and down the driveway toward the sidewalk. No other individuals were on the street. Officer Pitts approached the male on the sidewalk and observed him drop a screwdriver into the snow. The male, Larry McGowan, was arrested after Officer Pitts observed what he believed to be the butt of a handgun in appellant's pocket but was later learned to be a toy gun. Officer Pitts also found a pair of blue gloves in appellant's possession.

Appellant was arrested at 2425 Overlook, which is five or six houses from Lundeen's residence.

{¶ 5} There was fresh snow on the ground the morning of December 15, 2010 and Officer Pitts and Cleveland Heights police officer Matthew Lakser followed bootprints from where appellant was arrested to the house from which appellant was observed walking. The officers did not observe any other tracks in the snow. The bootprint trail led the officers behind 2443 Edgehill, where they found Lundeen's discarded purse with the contents dumped from it.

{¶ 6} Cleveland Heights police officer Matthew Cinadar responded directly to Lundeen's residence. Officer Cinadar found bootprint tracks outside Lundeen's home and a wet bootprint on the carpet inside of the home. Officer Cinadar identified the intruder's point of entry as an unlocked window and found a screen ripped from the casing. Officer Cinadar described the bootprint as distinctive, leaving ridge details in the snow. Officer Cinadar described the distinctive pattern of the bootprint as a U-shape on the bottom of the shoe, a circular gap, and a circular egg shape with more ridges on the top part. Officer Cinadar observed the bootprints near Lundeen's home, on the sidewalk, and near 2443 Edgehill. Officer Cinadar examined appellant's actual boot and found the prints to be consistent. The State submitted a picture of appellant's boot tread and a picture of one of the bootprints found outside Lundeen's home for finder of fact's own comparison.

{¶ 7} Officer Cinadar additionally found a discarded VHS tape in front of 2413 Edgehill and two discarded scarves on the sidewalk in front of 2405 Edgehill, where appellant would have had to have walked to get to where he was stopped.

{¶ 8} Lundeen was escorted from her home to the place where appellant was detained and identified appellant as the man she saw in her house. She concluded that appellant was the intruder she encountered in her home based on his height, physique and clothing, which she observed "within moments of seeing the same thing in my home."

{¶ 9} At trial, Lundeen testified that she did not know exactly how much money she had in her purse at the time it was taken but it would have been, "at least in the area of $350." Lundeen placed the value of the scarves at roughly $10 each. Lundeen estimated that the non-cash contents of her purse were worth $300. Finally, Lundeen's 87-year-old mother's credit card was in the purse when it was stolen.

{¶ 10} The trial court on March 7, 2011, found appellant guilty of burglary as charged in Count 1, theft of a credit card as charged in Count 3, and possession of criminal tools as charged in Count 4. The trial court specifically noted that the conviction for theft of a credit card was a felony of the fourth degree. With respect to Count 2, the trial court found appellant not guilty of the charge of theft of over $500 but guilty of petty theft under $500, a misdemeanor. Incongruously, the trial court issued a journal entry on the same date, stating in pertinent part, "The Court finds the Defendant guilty of theft; aggravated theft 2913.02A(1) M1 as charged in count(s) 2 of the

indictment."

{¶ 11} On March 28, 2011, the trial court imposed a prison term of two years on Count 1, time served on Count 2, one year on Count 3, and six months on Count 4. The trial court specified that the prison terms would run concurrently. Appellant brought the present appeal, advancing three assignments of error.

{¶ 12} Appellant's first assignment of error states:

{¶ 13} "1. The trial court improperly denied appellant's motion in limine regarding bootprint testimony, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio."

{¶ 14} Before trial, appellant filed a motion in limine to "prohibit non-expert state witnesses from testifying as to opinions, inferences, impressions, or conclusions drawn from facts that they have observed regarding bootprint evidence." The trial court denied appellant's motion in limine, and testimony was introduced at trial as to the responding police officers' observations of bootprints found both inside and outside Lundeen's home and from the place where appellant was arrested leading back to where Lundeen's discarded purse was found.

{¶ 15} Evid.R. 701 provides:

{¶ 16} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1)

rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 17} In *State v. Jells* (1990), 53 Ohio St.3d 22, 29, 559 N.E.2d 464, the Ohio Supreme Court held that, "a lay witness may be permitted to express his or her opinion as to the similarity of footprints if it can be shown that his or her conclusions are based on measurements or peculiarities in the prints that are readily recognizable and within the capabilities of a lay witness to observe. This means that the print pattern is sufficiently large and distinct so that no detailed measurements, subtle analysis or scientific determination is needed. In such a situation, the pattern is simply identified as being similar to that customarily made by shoes. In essence, the testimony is 'more in the nature of description by example than the expression of a conclusion.'" Id., quoting *State v. Hairston*, 60 Ohio App.2d 220, 223, 396 N.E.2d 773.

{¶ 18} In the case sub judice, we find no violation of the rule established in *Jells*. The testimony was that at 2:00 a.m. on December 15, 2010, fresh snow was on the ground and no other individuals were encountered in the area. Officer Pitts initially observed appellant exiting a backyard and walking down a sidewalk on Edgehill. Officer Pitts followed the sole set of bootprints visible from where he detained appellant to the back of 2443 Edgehill where he had recovered Lundeen's purse. Officer Lasker assisted Officer Pitts in detaining the appellant. Officer Lasker observed that the tread pattern on the bottom of appellant's boots matched the tread pattern to the bootprints found leading up

to 2443 Edgehill and agreed that no inconsistent prints were observed in the area. Finally, Officer Cinadar observed bootprints inside and outside Lundeen's home. Officer Cinadar testified as to the distinct ridge details, circular gap, and "U" and egg shapes left by the bootprints. He also observed the bootprints on the sidewalk and checked the print of appellant's boot. Officer Cinadar testified that he made a visual match of the bootprint treads by comparing the tread of the boot itself to the prints in the snow next to it. Finally, photos of the boot's tread and the bootprints left in the snow were introduced into evidence by the State and allowed the trier of fact to render his own conclusions as to the similarities between the two. The trial court properly admitted the lay witness testimony of the officers regarding the bootprints they discovered. The officers' testimony was rationally based on their observations and perceptions at the scene and was helpful to a clear understanding of their testimony.

{¶ 19} Appellant's first assignment of error is overruled.

{¶ 20} Appellant's second assignment of error states:

{¶ 21} "2. The verdict in this case was against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio."

{¶ 22} Appellant argues that his convictions for burglary, theft, and possessing criminal tools were not supported by sufficient evidence.

{¶ 23} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541 (Cook, J., concurring).

{¶ 24} The elements of the offenses for which appellant was convicted are set forth in statute. In regard to burglary, R.C. 2911.12(A)(1) provides:

"(A) No person, by force, stealth, or deception, shall do any of the following:

"(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;"

{¶ 25} R.C. 2911.21 defines criminal trespass, in relevant part, as:

"(A) No person, without privilege to do so, shall do any of the following:

"(1) Knowingly enter or remain on the land or premises of another;"

Appellant argues that the State failed to prove that he trespassed on Lundeen's property without privilege because at trial Lundeen did not specifically testify that he did not have permission to be in her home.

{¶ 26} "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."   R.C. 2901.01(A)(12).

{¶ 27} Contrary to appellant's argument, circumstantial evidence was introduced at trial that he entered Lundeen's home without privilege.  In fact, Lundeen testified that she awoke to find an individual, unbeknownst to her, in her home "uninvited."  Lundeen further labeled appellant, "an intruder" in her home.  Appellant cites no authority for the proposition that a burglary victim must utilize the magic words of "without privilege" in describing a home invasion.  Appellant's sufficiency challenge to his burglary conviction is without merit.

{¶ 28} Appellant argues that his convictions for theft in violation of R.C. 2913.02(A)(1) were not supported by sufficient evidence.  Count 2 charged appellant with theft of property "valued at $500 or more and less than $5,000."  Count 3 charged appellant with theft of a credit card where the victim of the offense is an elderly person or disabled adult.

{¶ 29} R.C. 2913.02, theft, provides in relevant part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

* * *

"(B) (1) Whoever violates this section is guilty of theft.

"(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. * * * "[1]

{¶ 30} With respect to Count 2, the trial court found appellant not guilty of the fifth degree felony theft charge in the indictment but guilty of petty theft, a misdemeanor. Appellant's argument that there was insufficient evidence that the value of the property stolen was $500 or more to support his conviction of a fifth degree felony charge of theft is misplaced as the trial court did not convict him of that charge. However, as we noted above, the record contains a discrepancy between the trial court's oral pronouncement finding appellant not guilty of felony theft and the trial court's journal entries, which reference aggravated theft. Given the discrepancy between the trial court's oral pronouncements at the conclusion of trial and sentencing and the apparent clerical errors in the court's March 7, 2011 and March 28, 2011 journal entries, we remand this case to

---

[1]R.C. 2913.02 was subsequently amended, effective September 30, 2011. The amendments increased the dollar value thresholds associated with each degree of the offense.

the trial court for appropriate corrections to the journal entries to accurately reflect that which the court announced in its verdict at the conclusion of trial and at the sentencing hearing. *State v. Lewis*, Cuyahoga App. Nos. 88627, 88628, 88629, 2007-Ohio-3640, at ¶17; *State v. Johnson*, Cuyahoga App. No. 83117, 2004-Ohio-4229, at ¶62.

{¶ 31} Appellant next argues that his conviction in Count 3 for theft of Lundeen's mother's credit card was not supported by sufficient evidence.

{¶ 32} R.C. 2913.71 provides, in relevant part:

"Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:

"(A) A credit card;"

{¶ 33} Appellant argues that even if he did break into Lundeen's home and steal her mother's credit card in her purse, the fact that he discarded the purse and credit card several houses away establishes that he did not intend to deprive Lundeen or her mother of the property.

{¶ 34} R.C. 2913.01(C) defines "deprive" to include any of the following:

"(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

"(2)  Dispose of property so as to make it unlikely that the owner will recover it;

"(3)  Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration."

{¶ 35} Appellant bases his argument on the fact that the purse and credit card were recovered several houses away from Lundeen's home behind a neighbor's home. Appellant suggests that because of this abandonment, the state cannot establish that he intended to deprive Lundeen and her mother of the credit card so as to make it unlikely that they would recover it.

{¶ 36} "Intent may be inferred from the circumstances surrounding the crime." *State v. Herring*, 94 Ohio St.3d 246, 266, 2002-Ohio-796, 762 N.E.2d 940. Because intent dwells in the mind of the accused, an intent to act can be proven from the surrounding facts and circumstances. *State v. Treesh*, 90 Ohio St.3d 460, 484-485, 2001-Ohio-4, 739 N.E.2d 749. Appellant's apparent argument that he only intended to retain only the cash from Lundeen's purse is undercut by the fact that the evidence at trial showed that he removed from Lundeen's home not simply the purse and the cash it contained but also two scarves and a VHS tape. This court has previously interpreted the theft statute to require the state to establish, beyond reasonable doubt, defendant's intent to deprive "at the time" the property was taken. *Brooklyn v. Fouche*, Cuyahoga App. No. 85510, 2006-Ohio-169, at ¶37. The fact that appellant changed his mind after the theft and, for whatever reason, abandoned the scarves, VHS tape, and the credit card in Lundeen's purse is irrelevant. Furthermore, the scarves, VHS tape and credit card were abandoned throughout Lundeen's neighborhood with the credit card and purse abandoned on another's property. There is no indication from the record that Lundeen was likely to

recover the abandoned property. The state presented sufficient circumstantial evidence that appellant intended to deprive Lundeen's mother of her credit card.

{¶ 37} We do note, however, that the trial court incorrectly found appellant's conviction for theft of a credit card to be a felony of the fourth degree. R.C. 2913.02(B)(3) provides that theft from an elderly person is a felony of the fifth degree. The statute provides for an escalation of the level of felony only if the value of the property stolen is five hundred dollars or more.[2] Similarly, R.C. 2913.71(A) provides that the theft of a credit card is a felony of the fifth degree. There is no provision in the statutes for these two enhancements to stack to elevate the crime to a fourth degree felony. As such, we find that the trial court should have properly sentenced appellant to a felony of the fifth degree.

{¶ 38} Finally, appellant argues that the state failed to present sufficient evidence that he possessed criminal tools in violation of R.C. 2923.24(A).

{¶ 39} R.C. 2923.24(A) provides, in relevant part that:

"(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

(B) Each of the following constitutes prima-facie evidence of criminal purpose:

***

(2) Possession or control of any substance, device, instrument, or article designed

---

[2]As mentioned in footnote 1, these monetary triggers were increased in value effective September 30, 2011.

or specially adapted for criminal use;

(3)   Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."

{¶ 40} The evidence at trial was that when approached by Officer Pitts, appellant dropped a screwdriver into the snow.   Officer Cinadar identified an open window with a screen that had been ripped out as appellant's point of entry into Lundeen's home. Further, Officer Pitts, while initially stopping appellant, observed what appeared to be a gun on his person.   The gun possessed a sufficiently realistic appearance such that Officer Pitts believed it to be a real gun.   Photographs of the toy gun introduced into evidence by the state support this conclusion.   It can be reasonably inferred from the facts that appellant possessed this toy gun for the purpose of aiding his burglary of an occupied home.   Contrary to appellant's argument, the state introduced circumstantial evidence that appellant possessed these items with an intent to use them criminally.

{¶ 41} Appellant's second assignment of error is sustained in part and overruled in part.

{¶ 42} Appellant's third assignment of error states:

{¶ 43} "3. The verdict in this case was against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio."

**{¶ 44}** The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 68, 2004-Ohio-6235, 818 N.E.2d 229.

**{¶ 45}** The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶ 46}** In challenging his convictions as against the manifest weight of the evidence, appellant refers us to the arguments he presented in his second assignment of error, challenging the sufficiency of the evidence. After reviewing the entire record, weighing all of the evidence and considering the credibility of witnesses, we find that this was not the exceptional case where the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered." *Leonard*, 104 Ohio St.3d at 68.

**{¶ 47}** Appellant's third assignment of error is overruled.

**{¶ 48}** The judgment of the trial court is affirmed in part and reversed in part. We vacate solely appellant's sentence on Count 3 to theft, a felony of the fourth degree, and remand to the trial court for proper resentencing under R.C. 2913.02(B)(2) and (C) and 2913.71 as theft, a felony of the fifth degree. We further remand for correction of the trial court's March 7, 2011 and March 28, 2011 journal entries to properly reflect appellant's conviction under Count 2 to be a conviction for petty theft.

It is ordered that the parties bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR