[Cite as *State v. Miller*, 2012-Ohio-1191.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 96781

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARVIN MILLER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## MODIFIED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Common Pleas Court
Case No. CR-543395

**BEFORE:** E. Gallagher, J., Sweeney, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 22, 2012

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
By:    John Wojton
          Brian D. Kraft
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio    44113


EILEEN A. GALLAGHER, J.:

{¶1}  Marvin Miller ("appellant") appeals his conviction for assault on a peace officer, rendered after a jury trial, and his 18-month sentence.  For the following reasons, we modify appellant's conviction and remand for resentencing.

{¶2}  At the time of the offense, appellant resided with his elderly and disabled mother at 7703 Lockyear Avenue, Cleveland, Ohio.  Members of appellant's family also reside on Lockyear Avenue, but in different houses.

{¶3}  Evidence at trial was that on October 19, 2010, Cleveland Police Officers, Orville Taylor #2361 and his partner, Jarod Schlacht #2378, received a radio dispatch to

respond to 7703 Lockyear Avenue, Cleveland, Ohio for a "mental male or male high on drugs threatening to assault his mother." When they arrived on the scene, they observed, through a locked security door, a "highly agitated" male, later identified as the appellant, holding a cane and mumbling incoherently. A female was also inside the home at the time. Appellant's family members ultimately arrived at the home and unlocked the security door. The officers entered and instructed appellant, under threat of the use of a taser, to drop the cane and, without the use of force, appellant did drop the cane.

{¶4} The officers then approached the appellant who charged at them while continuing what was described as "incoherent babbling." The officers each grabbed one of the appellant's arms in order to prevent him from hurting himself or any other person. At that point, the appellant began "flailing around * * * trying to do whatever he could to either get away or harm us" while his family members yelled at appellant to stop.

{¶5} Eventually, the officers took appellant to the ground in an effort to gain control over him, but he continued to struggle. Officer Taylor testified that during this struggle, he was kicked in the legs and kneed in the stomach and that the appellant grabbed at their clothing.

{¶6} Officer Schlacht removed his taser with intent to use it to subdue the appellant, but the appellant was able to wrest control of the weapon from Officer Schlacht and while Officer Schlacht struggled with the appellant over control of the

taser he received several shocks to his hands.

{¶7}  After the situation was under control, appellant's family members advised the officers that appellant suffered from mental health issues.

{¶8}  Appellant was charged with robbery in Count 1 alleging that he did:

in attempting or committing a theft offense as defined in 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Police Officer Schlacht #2378 inflict, attempt to inflict or threaten to inflict physical harm on another, Police Officer Schlacht #2378.

{¶9}  In Count 2, appellant was charged with assault upon Police Officer Taylor #2361 alleging that he did:

knowingly cause or attempt to cause physical harm to Police Officer Taylor #2361.   Furthermore, the victim of the offense was a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties.

{¶10}  The case proceeded to a trial by jury and a not guilty verdict was returned as to the crime of robbery and a guilty verdict as to the crime of assault — a felony of the fourth degree.   The appellant was sentenced to a term of one year and six months at the Lorain Correctional Institution.   This appeal followed.

{¶11}  In appellant's first assignment of error, he claims that:

the trial court erred, in violation of Defendant's right to Due Process under the 14th Amendment to the United States Constitution, in entering a judgment of conviction which was not supported by sufficient evidence, and which was against the manifest weight of the evidence.

{¶12}  Because the state has failed to support, with sufficient evidence, that

appellant's behavior rose to the level of "knowingly" — as required for an assault conviction — appellant's first assignment of error is well-taken.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. McGowan*, 8th App. No. 96608, 2011-Ohio-6166 at 23, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *McGowan*, 8th App. No. 96608, 2011-Ohio-6166 at ¶ 23 quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541 (Cook, J., concurring).

{¶13} Pursuant to R.C. 2901.22(B), a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶14} The evidence in this case is that during an attempt to subdue an individual who was "babbling incoherently," was mumbling, was in a highly agitated state who has mental health problems, the appellant struggled and was combative with the arresting officers. While struggling, the appellant was swinging his arms and kicking his legs which, at some point, made contact with Officer Taylor. This type of conduct, does not rise to the level of "knowingly."

**{¶15}** Therefore, the state has failed to support appellant's conviction of assault against Officer Taylor with sufficient evidence.

**{¶16}** Although the state failed to introduce evidence that the appellant did knowingly cause or attempt to cause physical harm to Officer Taylor in connection with appellant's conviction for assault, the record contains sufficient evidence to support a conviction for disorderly conduct in violation of R.C. 2917.11(A)(1), which has been found to be a lesser, included offense of assault. *State v. Young*, 8th Dist. No. 79779, 2002-Ohio-1274.

**{¶17}** It is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial. *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 35 (8th Dist.), citing *State v. Davis*, 8 Ohio App.3d 205, 207, 456 N.E.2d 1256 (8th Dist.1982).

**{¶18}** Therefore, appellant's first assignment of error is sustained, in part, and his conviction is modified accordingly.

**{¶19}** Given our modification of appellant's conviction, the second assignment is moot.

**{¶20}** Accordingly, the trial court's judgment is modified to reduce the conviction for assault on a peace officer to a conviction of disorderly conduct in violation of R.C. 2917.11(A)(1). This matter is remanded for sentencing consistent with the conviction, as modified.

**{¶21}** The sentence in this case is modified.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for imposition of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS WITH
SEPARATE OPINION


LARRY A. JONES, SR., J., DISSENTING:

**{¶22}** Respectfully, I dissent. I believe there was sufficient evidence to support Miller's assault on a peace officer conviction, and would affirm the conviction and 18-month sentence.

**{¶23}** "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. When a defendant challenges the sufficiency of

evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶24}** The evidence presented here demonstrated that, after learning of concerning behavior on the part of Miller, his family called the police to the house where Miller lived with his elderly and disabled mother. Six officers responded to the house, and Miller's family came to the house once the police arrived. His family had to let the police in because Miller would not open the door pursuant to police request.

**{¶25}** By all accounts, his family's included, Miller was "angry" and "agitated." Both Officers Taylor and Schlacht described Miller as taking a "fighting stance" with the police. The three officers who testified at trial stated that Miller banged his head into a curio cabinet, breaking the glass, and then "charged" or "rushed" them.

**{¶26}** Officers Taylor and Schlacht each grabbed one of Miller's arms, and a physical struggle between Miller and the police then ensued. Miller used his body weight to "bump" and "push" the officers around. Eventually, the officers were able to get Miller to the ground. He continued fighting, however, "kneeing" and kicking the officers. Officer Taylor testified that Miller struck him multiple times and he sustained bruising.

**{¶27}** Further, as the officers attempted to handcuff Miller, Miller was able to get Officer Schlacht's taser out of his hand. Miller waved the taser around, with it

activated, and shocked Schlacht. All six officers were involved in getting the taser back, restraining Miller, and eventually handcuffing him. Miller was transported to the hospital by ambulance. Officers Taylor and Schlacht rode with him in the ambulance because he was still "agitated" and "fighting." Miller had to be restrained during the ambulance ride.

{¶28} When questioned as to whether he believed Miller's ramming his head into the curio cabinet was accidental, Schlacht responded, "[n]o. Not at all." Similarly, another officer who was on the scene and testified at trial responded to the same question as follows: "That was voluntar[y]. There was nobody standing by him at that time."

{¶29} The officers testified that, although they did not, they believed they would have been justified in using deadly force against Miller. In fact, Miller's sister and brother-in-law both testified that they believed the police exercised restraint by not using greater force to subdue him.

{¶30} On this record, the majority finds that the state failed to present sufficient evidence that Miller "knowingly" caused or attempted to cause physical harm to Officer Taylor. The majority finds that Miller made physical contact with Taylor, but seems to focus on Miller's mental health issues in finding that he did not act knowingly. Miller was referred at the trial court level for competency and sanity evaluations. After being evaluated, the state and defense stipulated to the psychiatric report, which found Miller competent and sane at the time of the crime. His case continued on the mental health

docket.

**{¶31}** I disagree with the majority that the state failed to present evidence that Miller acted knowingly. Although this court has found that disorderly conduct can be a lesser-included offense of assault, I would uphold the assault conviction in this case. *State v. Young*, 8th Dist. No. 79779, 2002-Ohio-1274. In *Young*, this court declined to find the defendant's attorney ineffective for not requesting a disorderly conduct jury instruction. There, the defendant, while under apprehension, kicked an officer. The officer testified that the kick was not an accident, but the defendant testified that it was. This court found that the jury was properly instructed because the "prosecution presented evidence that the appellant acted with intent when he kicked [the officer]."

**{¶32}** This court also upheld a felonious assault conviction, which required that the state prove that the defendant acted knowingly, for a defendant who attacked a nurse while he was a patient in a mental health unit of a hospital. *State v. Reed*, 8th Dist. No. 89137, 2008-Ohio-312.

**{¶33}** Further, this court has upheld an assault conviction in a case factually similar to this case, where the police were called to the home of the defendant's mother because he was "very agitated and angry, and was 'raving and stomping and slamming doors.'" *State v. Caesar*, 8th Dist. No. 82136, 2003-Ohio-6168, ¶ 6. The defendant left the house but screamed obscenities at the police from the street. When he refused to follow the police orders to quiet down, the police informed him that they were arresting him for disorderly conduct; the defendant then fled. The police chased him,

caught him, and while trying to subdue him, the defendant kicked one of the officers in his upper thigh.

{¶34} Here, the state presented evidence that Miller, "angry" and "agitated," took a "fighting stance," and then "charged" the police. During the course of the ensuing struggle, Miller kicked and elbowed the officers numerous times. Six officers were required to subdue him. I would find that evidence sufficient to support the assault conviction against Miller.

{¶35} Accordingly, I dissent.