[Cite as *State v. Grice*, 2012-Ohio-1938.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97046**

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

**EZELL GRICE**

DEFENDANT-APPELLANT

**JUDGMENT:**
**CONVICTIONS AFFIRMED; SENTENCE AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541476

**BEFORE:** Rocco, J., Sweeney, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 3, 2012

-i-

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio   44113-2098

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Carl Sullivan
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} After a jury convicted him of burglary and theft, defendant-appellant Ezell Grice appeals from his convictions, sentences, and the trial court's denial of his motion for a new trial.

{¶2} Grice presents eleven assignments of error. In his first three, he argues the trial court improperly denied his motion for a new trial, because he presented enough evidence to show that another person confessed to committing the crimes, he was actually innocent, and the state took inconsistent positions in prosecuting suspects involved in the incident. Grice argues in his fourth and fifth assignments of error that the trial court not only allowed a state's witness to give improper testimony, but also wrongly limited defense counsel's closing argument. In his sixth, seventh, and eighth assignments of error, Grice takes issue with several jury instructions the trial court provided. Grice claims his convictions are not supported by either sufficient evidence or the manifest weight of the evidence in his ninth and tenth assignments of error. Finally, Grice argues in his eleventh assignment of error that the trial court did not orally impose court costs during sentencing; therefore, the journal entry of sentence that imposes court costs is flawed.

{¶3} The state concedes that the trial court failed to impose court costs during Grice's sentencing hearing. A review of the record, however, does not support any of Grice's other assignments of error. Consequently, Grice's convictions are affirmed, his sentence is affirmed in part and reversed in part, and the case is remanded for a limited sentencing hearing pursuant to *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

{¶4} According to the testimony presented by the state's witnesses, Grice's convictions result from an incident that occurred just after midnight on August 28, 2010. Charawn Thomas was in her car returning to her home on Louise Harris Drive. Charawn and her younger sister

Erionne lived on the same street, so Charawn "always" looked at Erionne's door as she drove past it. On this night, Charawn observed something unusual.

{¶5} Charawn had just left Erionne at their other sister's home, so Charawn knew no one was at Erionne's house. Nevertheless, Charawn saw two men "walking across the street with a TV [on] a stand" between them that she recognized as Erionne's. The men were proceeding from the area to the rear of Erionne's apartment as they carried the items, and Charawn watched them take the items to 2351 Louise Harris Drive. The resident of that address was seated outside of it on a wheelchair; he followed the two men with their burden into the home.

{¶6} Charawn stated both men wore white T-shirts, "[o]ne had khaki shorts on, bald head," and the other "had on blue jean shorts." The latter was approximately the same height as she, and the former was taller than his companion, "but much more built-like."

{¶7} Charawn continued on, but, rather than going to her own home, she went to a friend's. There, she got two people to accompany her to Erionne's apartment. When they came to the apartment's rear door, they saw that it had been "kicked in." Charawn walked inside. She immediately observed that Erionne's framed photographs had been thrown to the floor, and, besides the TV on its stand, Erionne's laptop computer also was missing. Charawn called the CMHA[1] police before she called Erionne.

{¶8} When the police officers arrived, Charawn showed them the rear door, which bore the mark of what appeared to be a shoe. She also pointed out the address to which she had seen the two men carry Erionne's TV and stand. By the time Erionne arrived to walk through her

---

[1] Louise Harris Drive is located within the jurisdiction of the Cleveland Metropolitan Housing Authority.

apartment, assess the damage, and to ascertain what was missing, the officers already had proceeded to the address Charawn indicated.

{¶9} Officers William Cattren and Eric Williams were among those who went to 2351 Louise Harris Drive. As Cattren knocked on the door, he could see through a window into the unit. In the middle of the living room, Cattren noticed "a large television that had a bicycle lock cable that attached the television to a stand of some sort, an entertainment stand." Cattren had a better view of the items when the leaseholder, Derrick Smith, opened the door.

{¶10} Williams explained their presence to Smith, who admitted them into his home. Besides the television on its stand, the officers also observed a laptop computer "on the right side of the door sitting on a duffle bag." Williams asked how the items came to be there, and Smith "pointed out" Grice's co-defendant, Deron Grant. Grant "raised his hand" and stated that he "did it."

{¶11} After the officers arrested Grant, however, they also arrested Grice. Grice was nearly bald, wore a white T-shirt and khaki shorts, and also was wearing athletic shoes with treads that were consistent with the mark on Erionne's rear door. A few minutes later, Erionne arrived at the scene to unlock the connecting cable, which demonstrated the TV and stand were hers.

{¶12} Grice later was indicted with Grant in this case, charged with one count of burglary and one count of theft of property in an amount over $500.00. Their case proceeded to a jury trial.

{¶13} After hearing the testimony of the state's witnesses, Grice presented the testimony of a shoe store manager and also testified in his own defense. He denied taking part in the crimes. Grice stated that, when he arrived at Smith's home, several people were there, including his nephew. Grice additionally testified that the stolen items were already inside when he arrived.

{¶14} The jury ultimately found Grice guilty on both counts. While awaiting sentencing for his convictions, Grice filed a motion for a new trial. In his supporting memorandum, Grice asserted both that his convictions were not supported by sufficient evidence and that he had discovered new evidence that proved his nephew had committed the crimes with Grant.

{¶15} The trial court first denied Grice's motion for a new trial when his case was called for sentencing. The court then sentenced him to two years of community control on the first count and to time served on the second.

{¶16} Grice appeals from his convictions and sentence with eleven assignments of error that will be combined and addressed together when appropriate. Grice's first, second, and third assignments of error state:

**"I. Defendant was denied due process of law when the court did not award him a new trial based on newly discovered evidence.**

**"II. Defendant was denied due process of law when the court overruled his motion for a new trial where defendant presented evidence of actual innocence.**

**"III. Defendant was denied due process of law when the prosecuting attorney took inconsistent positions with respect to those responsible for the burglary and theft."**

{¶17} In these assignments of error, Grice challenges the trial court's decision to deny his Crim.R. 33(A) motion for a new trial. Grice argues that he presented evidence that proved his nephew admitted to taking part with Grant in the burglary and theft of Erionne Thomas's property, thus exonerating Grice. Moreover, Grice asserts that the state later charged his nephew for taking part in these crimes, which Charwan Thomas indicated were committed by only two men.

{¶18} In *State v. Petro*, 148 Ohio St. 505, 507-508, 76 N.E.2d 370 (1947), citing *State v. Lopa*, 96 Ohio St. 410, 117 N.E. 319 (1917), the Ohio Supreme Court noted that the decision whether to grant a motion for a new trial is necessarily committed to the wise discretion of the trial court; *Petro* held that an appellate court cannot reverse the trial court's decision unless there has been a "gross abuse of that discretion." Furthermore, whether the trial court's discretion has been abused "must be disclosed from the entire record." *Petro*.

{¶19} In making his argument with respect to his first three assignments of error, Grice relies on several documents this court cannot consider. Pursuant to App.R. 12(A)(1)(b), this court is limited to determine the appeal on the record filed under App.R. 9.

{¶20} Thus, although Grice asserts he attached as an exhibit to his motion his nephew's affidavit, and, although the trial court's remarks at the sentencing hearing at the time when the court considered Grice's motion also indicate the trial court reviewed such an affidavit,[2] no affidavit is present in the record on appeal. It was neither attached to Grice's motion nor filed separately with the trial court. Similarly, the record of this case does not contain any documents that relate to the state's prosecution, if any, of Grice's nephew. *State v. Farris*, 8th Dist. No. 84795, 2005-Ohio-1749, ¶ 8-9.

{¶21} An adequate appellate record is the appellant's responsibility; in the absence of an adequate record, this court presumes the regularity of the proceedings below. *State v. Smith*, 8th Dist. No. 94063, 2010-Ohio-3512, ¶ 11-12. Because the trial court was in the best position to weigh the credibility of Grice's "evidence," this court assumes the trial court did not abuse its

---

[2]Indeed, the trial court referred to this document when it questioned Grice's nephew on the record about the averments contained in it.

discretion when it denied Grice's motion for a new trial. *State v. White*, 8th Dist. No. 88122, 2007-Ohio-4302, ¶ 10-12.

**{¶22}** Grice's first, second, and third assignments of error, accordingly, are overruled.

**{¶23}** Grice's fourth assignment of error states:

**"IV. Defendant was denied due process of law when the court allowed evidence of alleged shoe print comparisons."**

**{¶24}** In his fourth assignment of error, Grice argues that the trial court permitted Officer Williams to provide improper testimony regarding the shoe mark on Erionne Thomas's back door. Grice contends Williams's testimony was that of an "expert" pursuant to Evid.R. 702 but did not meet the requirements of that rule.

**{¶25}** This court recently considered a similar situation in *State v. McGowan*, 8th Dist. No. 96608, 2011-Ohio-6166. Citing *State v. Jells*, 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), this court determined in *McGowan* that the officer's testimony was admissible because he was not testifying as an expert but rather as a lay witness pursuant to Evid.R. 701.

**{¶26}** In this case, Williams testified that when he saw a "shoe print" on the back door of Erionne Thomas's apartment, he took a photo of it with a digital camera. Surmising that the print had been made by the person who kicked in the door, Williams paid attention during his investigation to the shoes of the men present inside Smith's unit.

**{¶27}** Williams stated that he compared their shoe treads to those shown in his photo, and that the treads on Grice's shoes "matched or came close to what [he] saw on that door." Williams's photos of the shoe print and of Grice's shoe treads were introduced into evidence, thus

allowing the jurors to come to their own conclusions as to the similarity between the two.[3] *McGowan*, ¶ 18.

**{¶28}** Williams's testimony demonstrates that it was both "rationally based on [his] perceptions" at the scene and was "helpful to a clear understanding of * * * the determination of a fact in issue"; therefore, the trial court properly admitted this testimony pursuant to Evid.R. 701.

**{¶29}** Accordingly, Grice's fourth assignment of error is overruled.

**{¶30}** Grice's fifth assignment of error states:

**"V. Defendant was denied the assistance of counsel when the court precluded argument about lack of flight."**

**{¶31}** Grice argues that his defense was compromised by the trial court's decision at the conclusion of the evidence that his counsel could not argue to the jury that, because Grice remained in Smith's unit during the police investigation, Grice exhibited "no consciousness of guilt."

**{¶32}** The trial court's control over the latitude afforded counsel during closing argument is discretionary and will not be overturned on appeal absent an abuse of discretion. *State v. Walters*, 9th Dist. No. 2775-M, 1998 WL 668378 (Sept. 30, 1998), citing *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph three of the syllabus. In order to constitute an abuse of discretion, the trial court's decision must be more than an error of law or judgment; it must be unreasonable, arbitrary, or unconscionable. *State ex rel. Grady v. State Emp. Rel. Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

---

[3]Grice failed to include any trial exhibits in the record on appeal. *See* App.R. 9.

**{¶33}** In this case, a review of the instance that forms the basis of Grice's fifth assignment of error fails to demonstrate that an abuse of discretion occurred. Although it is true that counsel generally is afforded wide latitude by the trial court during closing arguments, that latitude is not unlimited. *State v. Jordan,* 8th Dist. No. 73453, 1999 WL 257808 (Apr. 29, 1999), citing *Kubiszak v. Rini's Supermarket*, 77 Ohio App.3d 679, 688, 603 N.E.2d 308 (8th Dist.1991). The trial court's decision to restrict Grice from arguing to the jury that absence of flight demonstrated lack of consciousness of guilt on his part, without more, was not in itself unreasonable, arbitrary, or unconscionable.

**{¶34}** Accordingly, Grice's fifth assignment of error is overruled.

**{¶35}** Grice's sixth, seventh, and eighth assignments of error state:

**"VI.   Defendant was denied due process of law when the court instructed on aiding and abetting which omitted an essential element of aiding and abetting.**

**"VII.   Defendant was denied due process of la [sic] when the court failed to limit presumption of criminal intent in its aiding and abetting instruction.**

**"VIII.   Defendant was denied due process of law when the court's oral instructions varied from its written instructions."**

**{¶36}** In these assignments of error, Grice challenges several of the instructions the trial court provided to the jury. Grice's challenges are impeded by the following facts.

**{¶37}** First, Grice did not object to the trial court's instructions. Therefore, absent plain error, his assignments of error will be overruled. Crim.R. 30(A); *State v. Spirko*, 59 Ohio St.3d 1, 34, 570 N.E.2d 229 (1991); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraphs one and two of the syllabus.

{¶38} Second, this court must review the jury instructions in their entirety. *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. Single instructions may not be judged in artificial isolation; rather, each is viewed in the context of the overall charge. *Price*.

{¶39} Third, Grice neglected to include in the appellate record the written jury instructions. This court, therefore, cannot compare them to the oral instructions the trial court provided and presumes regularity rather than error. *State v. Turner*, 8th Dist. No. 78630, 2001 WL 1001019 (Aug. 23, 2001).

{¶40} A review of the record in this case fails to demonstrate plain error. The trial court instructed the jury as to each essential element of the crimes of burglary and theft before proceeding to define what constituted aiding and abetting in the commission of those crimes. When viewed in their entirety, the instructions adequately informed the jury of the culpability and evidence required for findings of guilt. *State v. Jackson*, 8th Dist. No. 73809, 1999 WL 328602 (May 20, 1999).

{¶41} For the foregoing reasons. Grice's sixth, seventh, and eighth assignments of error are overruled.

{¶42} Grice's ninth and tenth assignments of error state:

"**IX. Defendant was denied due process of law when the court overruled Defendant's motion for judgment of acquittal.**

"**X. Defendant was entitled to a new trial as the verdicts are against the manifest weight of the evidence.**"

**{¶43}** Grice argues his convictions for burglary and theft are not supported by either sufficient evidence or the manifest weight of the evidence. He thus contends the trial court should have granted his motions for acquittal and for a new trial.

**{¶44}** Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶45}** On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991); *Jackson v. Virginia*.

**{¶46}** A review of the manifest weight of the evidence is subjected to a different standard. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." *State v. Greene*, 8th Dist. No. 91104, 2009-Ohio-850, ¶ 38, citing *State ex rel. Squire v. Cleveland*, 150 Ohio St. 303, 345, 82 N.E.2d 709 (1948).

{¶47} The court in *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983), set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶48} However, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶49} In this case, Grice's convictions are supported by both sufficient evidence and the manifest weight of the evidence. Charawn testified that she saw two men walking across the street carrying Erionne's property; she was "no more than 10, 15 feet" from them. They were strangers to her, but she described what each man looked like and what each was wearing. The one she described as having a bald head and khaki shorts had a "built-like" physique. Both men went into Smith's apartment with Erionne's belongings.

{¶50} Williams testified he arrived within minutes of Charawn's call, saw a shoe print on the door the burglars had kicked in to gain entry into Erionne's home, spoke to Charawn, and immediately proceeded to Smith's unit, digital camera in hand. Williams stated Grice was present in Smith's apartment with the items, wore "tan" khaki shorts, and was "bald-headed" and "muscular." Grice also was wearing athletic shoes with treads that, in comparison to the digital photos, "matched or came close to" the shoe print mark on Erionne's door.

**{¶51}** Viewed in a light most favorable to the prosecution, a rational juror could have found the essential elements of burglary and theft had been established by this evidence. The trial court, therefore, properly denied Grice's motions for acquittal of the charges. *State v. Smith*, 8th Dist. No. 95541, 2011-Ohio-3581.

**{¶52}** The manifest weight of the evidence also supported Grice's convictions. *Smith.* In testifying on his own behalf, Grice stated he did not see who brought the TV and its stand into Smith's unit because he had been at Smith's house for only a few minutes before the police arrived, but Grice admitted he was wearing "cream-colored cargo shorts" that night. Moreover, although Charawn testified the other of the two men carrying Erionne's items wore "blue jean shorts," and although Williams testified Grant was wearing jean shorts, Grice stated he thought that Grant was wearing "black pants" that night. Grice further testified that he did not remember Grant raising his hand to state that he committed the crimes.

**{¶53}** Smith heard Grant admit to Williams that he committed the crimes, but, oddly, Smith could not recall anything about the man who helped Grant bring the items inside. In addition, Smith conceded that he and Grice had been friends for a few years before the incident and that they socialized with each other. Smith described Grant only in the following terms: "he cool."

**{¶54}** Based upon the testimony and evidence presented, the jury could determine that Charawn and Williams presented credible versions of events that was corroborated by Erionne, Officer Cattren, and the photos. The jury also could determine that the evidence Grice presented was unpersuasive and self-serving.

**{¶55}** Because Grice's convictions are supported by sufficient evidence and the manifest weight of the evidence, his ninth and tenth assignments of error also are overruled.

**{¶56}** Grice's eleventh assignment of error states:

**"XI.   Defendant was denied due process of law when the court, in its judgment entry of sentencing, set court costs where the court made no mention of court costs in pronouncing sentence."**

**{¶57}** Grice argues that the trial court improperly imposed court costs upon him in the journal entry of his sentence, because court costs were not imposed during his sentencing hearing. The state concedes this argument has merit.   The transcript of Grice's sentencing hearing also supports this argument.

**{¶58}** The Ohio Supreme Court stated as follows in *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278:

> While the failure of the court to orally notify Joseph that it was imposing court costs on him does not void Joseph's sentence, it was error: Crim.R. 43(A) states that a criminal defendant must be present at every stage of his trial, including sentencing.   The state urges that any error is harmless.   However, Joseph was harmed here.   He was denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court.   He should have had that chance.

**{¶59}** We therefore remand the cause to the trial court for the limited purpose of allowing Joseph to move the court for a waiver of the payment of court costs.   Should Joseph file such a motion, the court should rule upon it within a reasonable time.

**{¶60}** Based upon the foregoing, Grice's eleventh assignment of error is sustained.

**{¶61}** Grice's convictions are affirmed, and his sentence is affirmed in part and reversed in part.   This case is remanded for further proceedings consistent with *Joseph.*

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's convictions having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., and
MARY EILEEN KILBANE, J., CONCUR