[Cite as *State v. Tate*, 2014-Ohio-5269.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97804**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JAMES TATE, II**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-11-550840-A

**BEFORE:** E.A. Gallagher, J., Boyle, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 26, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY: Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue
Cleveland, Ohio 44113

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, Ohio 4414

Donald R. Murphy
12800 Shaker Boulevard
Suite 200
Cleveland, Ohio 44120


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Mollie Ann Murphy
        James M. Price
Assistant Prosecuting Attorneys
Justice Center 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} This cause is before this court on remand from the Ohio Supreme Court in *State v. Tate*, Slip Opinion No. 2014-Ohio-3667, for further review of our decision released February 21, 2013. The Ohio Supreme Court, having reversed our judgment in this case that was based on an issue not raised in Tate's appeal, has remanded it to us with instructions to consider Tate's assignments of error.

{¶2} Tate appeals from his conviction in the Cuyahoga County Court of Common Pleas of two counts of kidnapping, importuning, gross sexual imposition and public indecency. For the following reasons, we affirm in part, and reverse in part.

{¶3} The facts presented at a bench trial were that on February 12, 2012, B.P., a female 14 years of age at the time, went to the Euclid public library with two female friends, T.W. and L.J. T.W. and L.J. entered the library while B.P. stood outside, alone. B.P. was approached by Tate who showed her a business card and told her about a study group located away from the library, behind nearby tennis courts. Under the guise of being shown the location of the study group, B.P. walked away from the library with Tate who began talking to her about his business. Tate eventually began talking to B.P. about her body, telling her that "she could make a lot of money in one night."

{¶4} T.W. and L.J. observed B.P. walking away from the library with Tate and B.P. did not respond to their attempts to call to her other than to signal behind her back for them to follow her. T.W. and L.J. eventually lost sight of B.P. and Tate. Euclid police officer Adam Beese observed B.P. and Tate walking and talking near Euclid's Memorial Pool.

{¶5} Tate led B.P. out of sight behind the entrance to the pool where he told her that he wanted to make sure she was "committed to the business." Tate grabbed B.P.'s arm and she was

pulled to the ground on her knees. Tate removed his penis from his pants and used his grip on B.P. to rub her hand against it. B.P.'s phone buzzed at that point and she got off the ground claiming that her mother was at the library. B.P. and Tate walked back toward the library and encountered T.W. and L.J. Tate told B.P. that her friends did not need to know what had occurred and gave the three girls fliers for his business. B.P., T.W. and L.J. walked back to the library with Tate some distance behind them.

{¶6} Once inside the library, B.P. recounted the events to T.W. and L.J. who encouraged her to report the incident to the police. The three girls departed the library for the Euclid police station but not before seeing Tate inside the library seated at a computer.

{¶7} The girls recounted the incident to Euclid police who responded to the library and arrested Tate after his phone rang when the police dispatch called the phone number on the fliers presented by the girls.

{¶8} Tate testified at trial and claimed that B.P. initiated contact with him outside the library. This testimony was refuted by surveillance video from the library that showed Tate purposefully initiating contact with B.P. Tate testified that his purpose in speaking with B.P. initially was to recruit her to work for his employer, Clear Choice, after she expressed interest in his job. However, Tate admitted that he asked B.P. for oral sex while they were walking but claimed that he terminated the encounter when B.P. was unable to verify her age with identification. Tate denied luring B.P. away from the library with the promise of a study group, denied pulling B.P. to her knees and denied exposing himself.

{¶9} Not one of the girls who testified made an in-court identification of the defendant.

{¶10} Following a bench trial, the trial court found appellant guilty of two counts of kidnapping, importuning, gross sexual imposition and public indecency. The trial court imposed a prison term of seven years for each count of kidnapping, eighteen months for each count of

importuning and gross sexual imposition and six months for public indecency. All terms were ordered to be served concurrently. Tate appeals and his first assignment of error provides:

> Insufficient evidence supported appellant's convictions for kidnapping and gross sexual imposition.

{¶11} This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶12} Tate was convicted of two counts of kidnapping in violation of R.C. 2905.01(A)(2) and (A)(4). R.C. 2905.01 provides in relevant part:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter;
>
> * * *
>
> (4) To engage in sexual activity, as defined in section 2907.01 of the Revised
>
> Code, with the victim against the victim's will;

*Id.*

{¶13} Tate argues that the state failed to demonstrate a violation of R.C. 2905.01(A)(2) because there was no evidence that he used deception in luring B.P. away from the library for the

purpose of facilitating the commission of a gross sexual imposition. We disagree. Although Tate testified that he and B.P. walked away from the library while talking about her interest in his employment, B.P. testified that Tate lured her behind the Euclid Memorial Pool with the promise of leading her to a non-existent study program for helping kids. Tate's argument that the state failed to present evidence of his use of deception to lure B.P. to a secluded location for the purpose of committing a felony is without merit.

{¶14} Next, Tate argues that the state failed to offer evidence that he used force to restrain B.P.'s liberty for the purpose of engaging in sexual activity. This court has previously defined the element of "restrain the liberty of the other person" to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 23-24, quoting *State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867 (Mar. 7, 1996). *See also State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067 (Sept. 2, 1998) (restraint of liberty does not require prolonged detainment); *State v. Messineo*, 5th Dist. Athens Nos. 1488 and 1493, 1993 Ohio App. LEXIS 38 (Jan. 6,1993) (grabbing victim's arm and shaking her constituted restraint). R.C. 2901.01(A)(1) defines "force" as means any violence, compulsion, or constraint physically exerted by any meaning upon or against a person or thing.

{¶15} Tate's argument that the state offered insufficient evidence of force is without merit. B.P. testified that Tate used a grip on her arm to pull her to her knees when he pulled out his penis. B.P. stated that she did not go down to her knees voluntarily. Furthermore, even if we were to ignore B.P.'s testimony that she was involuntarily pulled to her knees, we note that Tate used his grip on her to rub her hand against his penis and B.P. testified that she did not want to

touch his penis. The state offered sufficient evidence of Tate's use of force for the purposes of kidnapping in Count 2.

{¶16} Finally, Tate argues that the state failed to present sufficient evidence that Tate used force to commit gross sexual imposition. We disagree. Gross sexual imposition is defined in R.C. 2907.05 as follows:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

{¶17} Contrary to Tate's argument, his actions in using his grip on B.P. to force her to touch his penis against her will satisfied the force element of gross sexual imposition. *See State v. Hilton*, 8th Dist. Cuyahoga No. 89220, 2008-Ohio-3010, ¶ 36 (defendant's act of taking victim's hand and making her touch his penis constituted gross sexual imposition); *State v. Harrison*, 1st Dist. Hamilton No. C-860700, 1987 Ohio App. LEXIS 9052 (Oct. 7, 1987) (defendant's act of pulling victim's hand to his groin where she felt exposed skin went beyond mere touching and constituted force sufficient to support a charge of gross sexual imposition).

{¶18} Tate's first assignment of error is overruled.

{¶19} Tate's second assignment of error provides:

The manifest weight of the evidence did not support appellant's convictions.

{¶20} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and

determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

**{¶21}** Tate argues that B.P.'s testimony that she was misled into accompanying Tate away from the library by the promise of a non-existent study group lacked credibility. Particularly, Tate notes that B.P. should not have reasonably believed that such a study group existed and, therefore, she must have accompanied Tate not because of the concocted study group story but of her own volition. We disagree. B.P. was 14 years old on the date of the offenses. B.P.'s testimony that Tate initiated contact with her was supported by the surveillance video while Tate's allegations that B.P. sought him out were refuted. The trial court found B.P. to be the more credible witness and noted the importance of the surveillance video in discerning which of the witnesses was telling the truth. We cannot say that the trial court clearly lost its way in finding Tate guilty of the above offenses.

**{¶22}** Tate's second assignment of error is overruled.

**{¶23}** Tate's third assignment of error provides:

Defense counsel was ineffective for failure to suppress 404(B) evidence and the admission of an unlawfully presented photo array.

**{¶24}** In order to demonstrate a claim of ineffective assistance of counsel, the appellant must show that his counsel deprived him of a fair trial. *State v. Sanders*, 8th Dist. Cuyahoga No. 55524, 1989 Ohio App. LEXIS 2362 (June 15, 1989). The appellant must specifically show that: (1) defense counsel's performance at trial was seriously flawed and deficient; and (2) the result of the trial would have been different if defense counsel had provided proper representation at trial.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶25}** The state presented the testimony of Heather Culver who described an encounter with Tate outside the Euclid public library on February 2, 2012. Culver was 18 years of age at the time. She testified that after Tate engaged her in a conversation outside the library and asked for her phone number, she ran inside the library and reported the interaction to the library administration and eventually the Euclid Police Department. At trial she identified Tate as the man who approached her. The state also introduced evidence that Culver identified Tate in a photo array.

**{¶26}** Tate argues that his trial counsel provided ineffective assistance of counsel by failing to move to suppress Culver's testimony and the photo array. In a segment of our prior opinion, which was not overruled by the Ohio Supreme Court's remand, we noted that the evidence in question, which was admitted without objection at trial, was clearly in violation of Evid.R. 404(B).

**{¶27}** R.C. 2945.59 states that "[i]n any criminal case in which the defendant's motive * * *, intent, * * * absence of mistake or accident * * *, scheme, plan, or system in doing an act is material," other acts that tend to prove these things are admissible into evidence. Additionally, Evid.R. 404(B) states that:

> evidence of other crimes, wrongs, or acts is not admissible to prove the character of
>
> a person in order to show action in conformity therewith. It may, however, be
>
> admissible for other purposes, such as proof of motive, opportunity, intent,
>
> preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶28}** Culver's testimony plainly did not qualify as relevant Evid.R. 404(B) testimony as Culver's brief interaction with Tate did not involve in any manner a request for sex, an attempt to

lure her away from the library by deception or any other criminal activity. Furthermore, Culver, unlike B.P., was 18 years of age at the time of the encounter.

{¶29} The trial court in the present instance denied a belated objection by appellant's counsel to the testimony of Culver. The court noted that Culver's testimony had been addressed at a pretrial where the prosecution indicated its intent to present it and appellant's counsel had offered no objection.

{¶30} Although Culver's testimony, and its related photo array, should not have been admitted because they violated Evid.R. 404(B), error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial. *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 40, citing *State v. Boczar*, 11th Dist. Ashtabula No. 2007-A-0034, 2008-Ohio-834, ¶ 50; *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

{¶31} Tate argues that the evidence at issue improperly bolstered B.P.'s credibility leading the trial court to accept B.P.'s version of events over his own. However, this argument is without merit because, as the trial court noted, the video surveillance evidence from the library refuted Tate's version of the encounter and confirmed B.P.'s testimony. Furthermore, Tate admitted at trial that he asked B.P. for oral sex but denied that B.P. was down on her knees during their encounter. However, Euclid police officer Phil Tschetter testified that while he was transporting Tate to the police station Tate made several spontaneous utterances including, "She got up off her knees and I walked away." These facts eviscerated Tate's credibility such that Culver's testimony was completely unnecessary. As for the photo array evidence, we note it was at best cumulative to the in-court identification Culver provided.

**{¶32}** In light of the substantial evidence of guilt, we find that the improperly admitted Evid.R. 404(B) evidence was harmless error. Even if appellant's trial counsel had been successful in excluding Culver's testimony or the photo array, the outcome of the trial would not have been different. *State v. Quarterman*, 8th Dist. Cuyahoga No. 99317, 2013-Ohio-4037, ¶ 31 (no prejudice where the outcome of the trial would not have been different even if appellant's trial counsel had been successful in excluding photo arrays). Furthermore, the present case was a bench trial and we note that appellate courts presume that a trial court considered only relevant and admissible evidence in a bench trial. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17.

**{¶33}** Tate's third assignment of error is overruled.

**{¶34}** Tate's fourth assignment of error provides:

> The trial court acted contrary to law by imposing appellant's sentence without applying Ohio's allied offenses statute.

**{¶35}** Tate failed to object to the imposition of multiple sentences below and has, therefore, waived all but plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). The Ohio Supreme Court has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96-102.

**{¶36}** Where the same conduct by the defendant can be construed to constitute two or

more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. R.C. 2941.25(A). Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his or her conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the defendant may be convicted of all of them. R.C. 2941.25(B).

{¶37} Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013-Ohio-699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶38} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25. The *Johnson* court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Pursuant to *Johnson*, the conduct of the accused must be considered in determining whether two offenses should be merged as allied offenses of similar import under R.C. 2941.25. *Id*. at syllabus. The determinative inquiry is two-fold: (1) "whether it is possible to commit one offense and commit the other with the same conduct," and (2) "whether the offenses were committed by the same conduct, i.e., a single act, committed with a single state of mind." *Id*. at ¶ 48-49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. Due to the subjective nature of the analysis based on the facts of each case, some crimes may be allied offenses in certain cases, but

not in another case under a different set of facts. *Johnson* at ¶ 52.

{**¶39**} Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id*. at ¶ 51.

{**¶40**} The term "animus," as defined by the Ohio Supreme Court in *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979), means "purpose or, more properly, immediate motive." Tate argues that his two kidnappings convictions and the gross sexual imposition and public indecency convictions should all merge as allied offenses. We agree in part.

{**¶41**} We first consider the two kidnapping convictions. Tate argues that his kidnapping conviction for luring B.P. away from the library by deception should merge with his kidnapping conviction for using force to compel B.P. to her knees and touch his penis. We disagree.

{**¶42**} In *Logan*, the Ohio Supreme Court set forth the following test to determine what constitutes a separate animus for kidnapping and a related offense. Specifically, the court stated:

> In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines
>
> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id*. at syllabus.

{¶43} We find this court's decision in *State v. Widner*, 8th Dist. Cuyahoga No. 95147, 2011-Ohio-1364, to be instructive in the present instance.   In *Widner*, the defendant offered to take his victim to a carnival and treat him to unlimited rides.   The facts in Widner were as follows:

> After a few rides, Widner suggested they go out to eat and shopping for video games before returning to the carnival.   Widner and the victim left the carnival in Widner's van and went out to eat. After dinner, they went shopping at several stores, but instead of buying video games, Widner purchased a tote bag.

> When they returned to the van after shopping, Widner told the boy he had a gun and then, after forcing him to undress, tied his limbs together with duct tape. Widner then drove the victim to his apartment, forced him to get into the tote bag, and then left him in the van while he got a dolly. When he returned to the van, Widner put the tote bag, with the child inside, onto the dolly and took the child into his apartment. Once inside the apartment, Widner removed the duct tape and raped the boy.

> At his apartment, Widner threatened the victim with a knife and forced him to stay there overnight. In the morning, he raped the boy again. Widner then ordered the victim back into the tote bag and took him back to his van on the dolly. Widner drove the victim around and finally dropped him off in his neighborhood, where he eventually found his way back home.

*Id*. at ¶ 6-8.

{¶44} This court held that the initial kidnapping wherein Widner lured the victim away from the carnival under false pretenses was not allied with the kidnappings by force to facilitate the rapes.   *Id*. at ¶ 19.   We explained that the initial kidnapping involved asportation by deception while the subsequent kidnappings involved asportation by force.   *Id*. at ¶ 21. Widner's conduct in luring the victim away from the carnival was different than that involved in subsequently restraining and confining him by force.   Thus, we concluded that the kidnapping counts did not involve the same conduct. *Id*. at ¶ 24.   *See also State v. Ware*, 63 Ohio St.2d 84, 406 N.E.2d 1112 (1980) (defendant's kidnapping conviction for luring his victim to his apartment

by promising the use of a telephone he did not have was not allied with the asportation incident to the rape he committed when the victim refused his advances and he carried her to an upstairs bedroom); *State v. DePina*, 21 Ohio App.3d 91, 486 N.E.2d 1155 (9th Dist.1984) (defendant's kidnapping conviction for inducing his victim out of a bar and into a parking lot by deception was not allied with the force and asportation involved with his subsequent act of dragging her into a wooded area and raping her).

{¶45} The holdings of *Widner*, *Ware* and *DePina* are supported by the explanation provided by Justice O'Donnell in his concurring opinion in *Johnson*, where he explained:

> [I]f the state presented evidence that a defendant lured a victim to his home by deception, for example, and then raped that victim, an indictment may contain separate counts for the rape and for the kidnapping. In this hypothetical, * * * the luring of the victim by deception and the separate act of rape —results in two offenses being committed separately; therefore, the indictments may contain counts for both offenses and the defendant may be convicted of both.

*State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 81 (O'Donnell, J., concurring in judgment and syllabus). (Footnotes omitted).

{¶46} Based on the above authority we find that his two kidnapping charges in this case should not merge. Tate's actions in luring B.P. away from the library to a secluded location where he himself admitted he requested oral sex, were distinct from the force he subsequently used to facilitate the gross sexual imposition.

{¶47} Although the two kidnapping counts do not merge, we do agree that Tate's second kidnapping, wherein he used force to compel B.P. to her knees and contact his penis, should have merged with the offenses of gross sexual imposition and public indecency. The force used in that kidnapping charge was necessary to accomplish the gross sexual imposition. Indeed, the force element of both crimes refers to the same conduct and Tate committed the offenses

simultaneously and with the same animus.

**{¶48}** We also find that Tate's public indecency and gross sexual imposition counts should have merged. Tate exposed his penis to B.P. in the course of, and as a necessary function of committing, a gross sexual imposition. A gross sexual imposition wherein a defendant causes another to unwillfully touch his penis necessarily involves an act of public indecency in violation of R.C. 2907.09. In this instance Tate committed both offenses simultaneously, with the same course of conduct and with the same animus. We find them to be allied offenses in this instance.

**{¶49}** Finally we note that Tate has not presented any argument in support of merging his conviction for importuning in violation of R.C. 2907.07(B) with the above offenses. However, Tate himself admitted in his testimony that he verbally requested B.P. perform oral sex on him. We find this verbal act to be distinct from Tate's conduct in forcing B.P. to touch his penis with her hand and find merger inappropriate for the importuning charge.

**{¶50}** Tate's fourth assignment of error is overruled in part and sustained in part.

**{¶51}** Tate's fifth assignment of error states:

The trial court erred in failing to inform appellant of court costs at sentencing, then imposing them in its sentencing entry.

**{¶52}** A trial court cannot impose court costs on a defendant solely through a journal entry. *State v. Moore*, 8th Dist. Cuyahoga No. 100401, 2014-Ohio-2979, ¶ 31, citing *State v. Grice*, 8th Dist. Cuyahoga No. 97046, 2012-Ohio-1938, ¶ 57-59. Court costs must also be imposed during the sentencing hearing. *Id*. The Ohio Supreme Court has held that a failure to impose costs at sentencing constitutes error because the defendant has no opportunity to have those costs waived. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22. In this case, the state concedes that the trial court made no mention of court costs at the sentencing

hearing but imposed them in Tate's sentencing entry. In light of this error, Tate's fifth assignment of error is sustained.

{¶53} Tate's sixth assignment of error states:

The trial court erred when it failed to make statutorily necessitated findings before imposing a seven year sentence of imprisonment.

{¶54} Tate argues that the trial court failed to properly consider the seriousness and recidivism factors of R.C. 2929.12 at sentencing, failed to make findings pursuant to that statute and abused its discretion.

{¶55} This court no longer applies the abuse of discretion standard of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, when reviewing a felony sentence. *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7. Instead, we follow the standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶56} A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness

and recidivism factors listed in R.C. 2929.12, properly applies postrelease control and sentences a defendant within the permissible statutory range. *A.H.* at ¶ 10, citing *Kalish*.

{¶57} Under R.C. 2929.12(A), trial courts must consider a nonexhaustive list of factors, including the seriousness of the defendant's conduct, the likelihood of recidivism, and "any other factors that are relevant to achieving those purposes and principles of sentencing."

{¶58} The sentencing court is not required, however, to engage in any factual findings under R.C. 2929.11 or 2929.12. *State v. Bement*, 8th Dist. Cuyahoga No. 99914, 2013-Ohio-5437, ¶ 17; *State v. Combs*, 8th Dist. Cuyahoga No. 99852, 2014-Ohio-497, ¶ 52.   While trial courts must carefully consider the statutes that apply to every felony case, it is not necessary for the trial court to articulate its consideration of each individual factor as long as it is evident from the record that the principles of sentencing were considered. *State v. Roberts*, 8th Dist. Cuyahoga No. 89236, 2008-Ohio-1942, ¶ 10.   Instead, the trial court still has the discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. *Bement* at ¶ 17, citing *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 49.

{¶59} The record in this case reflects that the trial court did, in fact, consider R.C. 2929.12 in sentencing Tate.   The trial court's sentencing entry clearly indicates that the court considered "all required factors of law." The trial court allowed Tate and his counsel to advocate for a lesser sentence.   The trial court noted that Tate had a prior conviction for unlawful sexual conduct with a minor.   Furthermore, instead of showing any genuine remorse for his offenses Tate continued to place blame on the victim at sentencing.   Tate's argument that the trial court failed to consider R.C. 2929.12 is without merit.

{¶60} Tate's sixth assignment of error is overruled.

{¶61} The judgment of the trial court is affirmed in part and reversed in part.

**{¶62}** Accordingly, we vacate Tate's sentences for kidnapping in Count 2, gross sexual imposition, and public indecency. Case is remanded to the trial court with instructions to merge those convictions and allow the state to elect under which count to proceed to sentencing. Case further remanded to allow for Tate to move the court for a waiver of the payment of court costs.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR