[Cite as *State v. Weaver*, 2016-Ohio-811.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102902

---

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## HERMAN WEAVER

### DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590255-A

**BEFORE:** Jones, A.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 3, 2016

**ATTORNEY FOR APPELLANT**

Christina M. Joliat
P.O. Box 391531
Solon, Ohio 44139


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Jennifer L. O'Malley
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

**{¶1}** Defendant-appellant Herman Weaver appeals his ten and one-half-year sentence, which was rendered after his guilty pleas to one count each of conspiracy and possessing criminal tools, and ten counts of deception to obtain a dangerous drug. We affirm the sentence, but remand the case so that the trial court can issue a nunc pro tunc sentencing entry incorporating its findings for the imposition of consecutive sentences.

## I. Procedural History and Facts

**{¶2}** Weaver was one of 11 defendants indicted in a fraudulent prescription drug scheme. According to law enforcement's investigation, Weaver, who had a medical degree, would write fake prescriptions for drugs, mainly oxycodone, and then recruit people to fill the prescriptions. Weaver has a history of drug abuse and at the time of these crimes was working as a counselor for a ministry aimed at helping people with substance abuse issues who had been released from prison to reintegrate into society.

**{¶3}** According to the investigation, many of the people Weaver recruited to fill the fraudulent prescriptions were people who sought help from the ministry; some of the other recruits were homeless people. The record further demonstrates that Weaver was the "mastermind" of the operation, and his "right-hand man" was codefendant Samuel Jackson. Many of the people who filled the prescriptions described both Weaver and Jackson as being "forceful" with them and "controlling" over them. To facilitate these crimes, Weaver stole prescription pads from MetroHealth Hospital.

**{¶4}** On May 20, 2014, Weaver and codefendant Jackson were arrested by the South Euclid police while trying to fill a fraudulent prescription at Marc's Pharmacy. Weaver's vehicle was inventoried incident to the arrest, and the police recovered a binder in which there

was an internet printout detailing how to write a prescription. Also recovered were numerous prescription papers, some of which were filled out with various "patient" names.

{¶5} Weaver admitted to the South Euclid police that he had written the fraudulent prescriptions, and told them that he was addicted to crack cocaine and had a $300-$400 per day habit. Weaver denied, however, "recruiting" people to fill the prescriptions; he told the police that he merely "offered the opportunity" to make money to people he knew.

{¶6} On March 2, 2015, Weaver pleaded guilty to one count each of conspiracy and possessing criminal tools, and ten counts of deception to obtain a dangerous drug. The court referred the matter for preparation of a presentence investigation report, a "Treatment Alternative to Street Crimes," commonly known as "TASC" assessment, and a mitigation report from the court's psychiatric clinic.

{¶7} After those documents were completed, sentencing was held on March 31, 2015. The TASC assessment indicated that Weaver was alcohol and cocaine dependent, and recommended treatment. Defense counsel indicated that Weaver was eligible for placement in a community-based correctional facility where he could complete a treatment program, and requested that the court sentence him to that instead of prison. A friend and colleague of Weaver spoke on his behalf.

{¶8} In his statement to the court, Weaver denied: (1) being the "mastermind" of the scheme; (2) that Jackson was his "right-hand man"; and (3) that he recruited people from the ministry for which he was working.

{¶9} The trial court sentenced Weaver to a 12 and one-half year prison term as follows: nine months on each deception to obtain a dangerous drug conviction; 12 months on the possessing criminal tools conviction; and five years on the conspiracy conviction. The

convictions on the ten counts of deception to obtain a dangerous drug were ordered to be served consecutively to each other, and those sentences were ordered to be served consecutively to the five-year sentence on the conspiracy conviction. The trial court also ordered a five-year driving privilege suspension. The trial court failed to advise Weaver of postrelease control at the initial sentencing hearing, but held a separate hearing to advise him. Weaver now assigns the following three assignments of error for our review:

> I. Appellant Herman Weaver's sentence is contrary to law as the trial court failed to properly consider the purposes and principles of felony sentencing.
>
> II. The trial court abused its discretion in sentencing appellant Herman Weaver by imposing mandatory and consecutive sentences without the required findings.
>
> III. The trial court failed to administer appellant Herman Weaver the statutorily required post-release control notification.

## II. Law and Analysis

{¶10} Weaver's three assignments of error, all dealing with his sentence, will be considered together.

{¶11} Weaver contends that the trial court abused its discretion in sentencing him. In reviewing felony sentences, however, we no longer use an abuse-of-discretion standard of review, but apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014-Ohio-5269, ¶ 55. R.C. 2953.08(G)(2) provides:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division
>
> (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or

division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶12} Thus, R.C. 2953.08(G)(2) requires an appellate court to review the entire record to determine if it clearly and convincingly finds that the record does not support the sentencing court's statutory findings or if the sentence is otherwise contrary to law.

{¶13} In his first assignment of error, Weaver contends that the trial court failed to properly consider the purposes and principles of felony sentencing. We disagree.

{¶14} Under R.C. 2929.11(A), a felony sentence shall be reasonably calculated to achieve two "overriding purposes": (1) to protect the public from future crimes by the offender, and (2) to punish the offender using the minimum sanctions the court determines will achieve those purposes. Further, under R.C. 2929.11(B), the sentence imposed for a felony must be commensurate with the seriousness of the offender's conduct and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶15} Under R.C. 2929.12(A), a court sentencing a felony offender has discretion to determine the most effective way to comply with the purposes and principles of sentencing outlined in the statute. In exercising its discretion, however, the sentencing court must consider the seriousness, recidivism, and other mitigating factors set forth in R.C. 2929.12. *Id.*

{¶16} Although the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13.

{¶17} Consideration of the appropriate factors can be presumed unless the defendant

affirmatively shows otherwise. *Jones* at *id.*, citing *State v. Stevens*, 1st Dist. Hamilton No. C-130279, 2013-Ohio-5218, ¶ 12. Further, a trial court's statement in its sentencing entry that it considered the required statutory factors is sufficient to fulfill a trial court's obligations under R.C. 2929.11 and 2929.12. *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 72, citing *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 9.

{¶18} Here, the trial court stated on the record at the sentencing hearing that it had "reviewed the purposes and principles set forth in felony sentencing." The court noted on the record that: (1) Weaver's victims were vulnerable people with mental health and addiction issues; (2) Weaver used his medical background to facilitate these crimes; and (3) Weaver had a criminal history and had not taken advantage of prior opportunities to rehabilitate himself. Further, the trial court stated in its sentencing entry that it "considered all required factors of the law" and "finds that prison is consistent with the purposes of R.C. 2929.11."

{¶19} This record demonstrates that the trial court properly considered the purposes and principles of felony sentencing under R.C. 2929.11 and 2929.12. The first assignment of error is therefore overruled.

{¶20} Weaver's second assignment of error challenges the imposition of consecutive sentences. R.C. 2929.14(C)(4) allows for the imposition of consecutive sentences if the trial court finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed pursuant

to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under

post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more

courses of conduct, and the harm caused by two or more of the multiple offenses

so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the

seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive

sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c). A trial court is not required to state reasons to support these

statutory findings. *State v. Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 13, citing

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16.

**{¶21}** The trial court made all the findings, stating:

> I absolutely find that consecutive sentences are necessary to protect the public
> from future crimes and to punish you. And that consecutive sentences are not at
> all disproportionate to the seriousness of your conduct and to the danger that you
> pose to the public. I find that, at least, this was certainly a course of conduct that
> you engaged in and that the harm caused by your activities here are so great or
> unusual that no single prison term for any of these offenses committed as part of
> any course of conduct would adequately reflect the seriousness of your conduct.
> And as I've already articulated, you have a criminal history that demonstrates that
> consecutive sentences are necessary to protect the public from future crimes by
> you.

**{¶22}** Defense counsel asked the court to reconsider its sentence; the court denied the

request, stating:

> [W]hat would you ask me to do [for] [Weaver] that hasn't already been attempted,
> already tried?

And again, sir, I will tell you that I understand addiction * * *. But when you come to the point where engaging in the kind of activity that you're involved in here, drawing those other people in and getting them involved into a deeper spiral with their own addictions, that's not acceptable. And then when you compile that with the fact that you've done this time and time and time again — you want to go out and get high, you want to go out and do drugs on your own. If you come back and had tested positive on a probation violation, we would perhaps be having a much different conversation. But I think I have an obligation to protect, at least, if nothing else, I have the obligation which I will accept the obligation * * * to protect these people who are suffering from addiction, who are suffering from mental illness.

{¶23} Weaver contends that the trial court improperly sentenced him to consecutive terms for the following reasons:

multiple offenses were committed as part of a course of conduct but there was no harm that was so great or unusual that a single term for any of the offenses committed adequately reflects the seriousness of Appellant's conduct or that his criminal history demonstrates that consecutive sentences are necessary to protect the public. Appellant did not cause any physical or mental pain and the course of conduct upon which the indictments are based lasted for a total of about 6 weeks. Appellant's history of criminal conduct reflects that of an addict. His criminal history is clustered at times of relapse with long periods of non-offending behavior when sober. * * * [T]his aggregate sentence is clearly disproportionate to the seriousness of Appellant's conduct and any potential danger that he poses to the public.

{¶24} We disagree with Weaver. As one law enforcement official explained the following to the court:

Multiple other parties were involved in this * * * and they all painted basically the same picture. And the picture is, is that Mr. Weaver * * * used his position * * * as a drug counselor to recruit people who were vulnerable [due] to their addictions and [got] them to participate in this prescription drug ring. * * *

* * * [S]everal of the females that were interviewed explained that, for their participation in this prescription [drug] ring, other things were asked of them or coerced out of them. These vulnerable souls will [for]ever be marked with what they had to endure, including cleaning [houses] and * * * being passed [in a sexual sense] to other people or men.

{¶25} This record indicates that great harm was caused here by Weaver's conduct.

**{¶26}** In regard to Weaver's criminal history, the trial court noted he had several prior cases for committing the same type of crimes as in this case, and that as a result of those cases he had four prior opportunities for treatment. The record indicates that, while on probation for at least one of his prior cases, Weaver picked up a new case. Thus, the trial court did not err by finding that Weaver's criminal history necessitated consecutive terms.

**{¶27}** In light of the above, this record supports the trial court's findings in regard to both the harm caused and the proportionality of the seriousness of Weaver's conduct and the danger he poses to the public. The consecutive sentences are therefore affirmed.

**{¶28}** However, as Weaver points out, the trial court failed to incorporate its consecutive sentence findings into its sentencing entry. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, requires that the findings be incorporated into the sentencing entry. *Id.* at ¶ 29. Although the trial court must incorporate the statutory findings required for consecutive sentences into its sentencing entry, the failure to include the findings is a "clerical mistake" and does not render the sentence contrary to law. *Id.* at ¶ 29-30, citing *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718. The omission may therefore be corrected through a nunc pro tunc entry "to reflect what actually occurred in open court." *Id.*

**{¶29}** Weaver also contends in his second assignment of error that the trial court failed to make findings for the imposition of the maximum sentence on the possessing criminal tools conviction. His argument is without merit. Prior to the commission of the offenses, the Ohio Supreme Court deemed the statute that required findings for maximum sentences to be unconstitutional and severed that provision from the sentencing statute. *State v. Foster*, 109 Ohio St.3d 1, 20, 2006-Ohio-856, 845 N.E.2d 470. As of yet, the General Assembly has not revived the maximum sentencing findings in the felony sentencing statutes. The trial court

therefore was not required to make maximum sentencing findings.

{¶30} In light of the above, the second assignment of error is overruled.

{¶31} In the final assignment of error, Weaver contends that the trial court failed to inform him at sentencing about postrelease control. The law requires that when sentencing a felony offender to prison, the trial court is required to advise the defendant at the sentencing hearing about postrelease control and then to incorporate that advisement into its sentencing judgment entry. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 26.

{¶32} Weaver is correct that at the initial sentencing hearing held on March 31, 2015, the trial court did not advise him about postrelease control. There is an addendum to the transcript, dated March 3, 2015, however, in which the trial court advised Weaver of postrelease control. Weaver contends that the advisement was improper because it was not done at the time of sentencing. We disagree.

{¶33} Upon review, we find the date in the transcript, March 3, 2015, to be an error for two reasons. First, Weaver pleaded guilty on March 2, 2015, and the trial court advised him at that hearing about postrelease control in the event that it sentenced him to a prison term. Therefore, there would have been no need to have a hearing the day after his plea to give him postrelease control notifications.

{¶34} Second, the trial court stated the following at the hearing for the postrelease control advisement: "So we're back on the record * * *. *We sentenced Mr. Weaver earlier today.* Mr. Weaver, I apologize for bringing you back up, but I did forget to advise you that, as part of your sentence, when you're released from prison you'll be subject to a period of supervision by the Ohio Adult Parole Authority." (Emphasis added.)

{¶35} In light of the above, it is clear that Weaver was given notification about

postrelease control on March 31, 2015, the same day he was sentenced. Further, the advisement was incorporated into the sentencing judgment entry. The third assignment of error is therefore overruled.

## III. Conclusion

{¶36} Weaver's sentence is affirmed. The trial court properly considered the purposes and principles of felony sentencing under R.C. 2929.11 and 2929.12. The court also made the required findings for the imposition of consecutive sentences and those findings are supported by the record. No findings were required by the court for the imposition of a maximum sentence. Further, Weaver was advised at sentencing of postrelease control. The case is remanded, however, for the sole purpose of the trial court issuing a nunc pro tunc entry incorporating its findings for the consecutive sentences into its sentencing judgment entry.

{¶37} Affirmed and remanded.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
PATRICIA ANN BLACKMON, J., CONCUR