[Cite as *State v. Frost*, 2019-Ohio-93.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106964**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DEANGELO FROST**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-622098-A

**BEFORE:** Kilbane, A.J., E.A. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 10, 2019

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue
Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Janna R. Steinruck
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, A.J.:

{¶1} Defendant-appellant, Deangelo Frost ("Frost"), appeals his conviction for unlawful sexual conduct with a minor. For the reasons set forth below, we affirm.

{¶2} In October 2017, Frost was charged in a ten-count indictment. The charges included four counts of rape; two counts of kidnapping, each with a sexual motivation specification attached; two counts of unlawful sexual conduct with a minor, with a furthermore clause indicating the offender was ten or more years older than the victim; and two counts of gross sexual imposition. The indictment listed the victim as T.O., and it listed her date of birth as June 20, 2003, and Frost's date of birth as February 24, 1989. The matter proceeded to a jury trial on January 23, 2018, at which the following evidence was adduced.

{¶3} T.O.'s father ("Father") testified at trial that he went to prison 18 months after she was born, and that he was awarded custody of her in 2015, shortly after he was released from

prison. Although paternity was never established, Father raised Frost as his son. He testified that T.O. and Frost had a big brother-little sister relationship.

{¶4} Father testified that Frost and his girlfriend, Monisha, along with her three children had been living with him in a two-family house in Cleveland, Ohio. Father's bedroom was in the finished attic or third floor, T.O.'s bedroom was on the second floor, and Frost shared a bedroom with Monisha and her three children, which was also located on the second floor.

{¶5} Father testified that sometime in September 2017, he received a telephone call from Monisha, who sounded very upset. He was upstairs in his bedroom at the time, so he went downstairs to speak with her. Monisha informed him that Frost had been sexually assaulting T.O. Monisha then attempted to show Father text messages that T.O. sent to Frost's cell phone, but it was taking too long, so he went to speak with T.O.

{¶6} Father testified that after speaking with T.O., he spoke again with Monisha, who showed him the text messages meant for Frost that she had intercepted because she had Frost's phone in her possession. After viewing the text messages, Father went and spoke with T.O. again and tried to assure her that it was not her fault.

{¶7} Father testified that he later attempted to contact Frost, who was not at home at the time, but was unsuccessful. Father contacted the Cuyahoga County Division of Children and Family Services ("CCDCFS"), who instructed him to take T.O. to the police station. After visiting the police station, Father took T.O. to the hospital, where a sexual assault physical examination was conducted.

{¶8} Father testified that subsequent to the revelation, T.O.'s demeanor and emotions have fluctuated. Father stated that when he recently attempted to hug T.O. from behind, she elbowed him and recoiled. Two days later, T.O. said Father's body reminded her of Frost's.

{¶9}   T.O. testified that Frost is her brother, and she has known him since she was a baby.  She had not been in contact with him for a number of years, but had reconnected in the early part of 2017.  T.O. testified that late one night in July 2017, Frost entered her bedroom, while she was watching television, and began making contact with her vaginal area over her clothing.  She stated Frost proceeded to pull down her pants and then inserted his penis into her vagina.  T.O. stated that she told Frost: "[y]ou need to stop."  Frost withdrew his penis, left the room and went to the bathroom.  T.O. stated that she did not tell her Father because she did not want Frost to get in trouble.

{¶10} T.O. testified that sometime in August 2017, she went to the kitchen to get a drink of water.  As she was returning to her bedroom, she observed Frost standing in the living room.  T.O. testified that Frost said "[c]ome here, and I did.  And then that's when he pulled down my pants and bent me over on the couch and he put his penis in my vagina."

{¶11} T.O. testified she told Frost he needed to stop, but he refused.  Eventually, Frost withdrew his penis, left the room and went to the bathroom.  T.O. stated that she also did not tell her Father about the second incident, because she did not want Frost to get in trouble and did not want the family to be broken apart.

{¶12} At trial, T.O. was presented with a print out of the aforementioned text messages she sent to Frost's cell phone.  She offered the following testimony:

[STATE]:     [T.O.], do you remember sending text messages to [Frost]?

[T.O.]: Yes.

[STATE]:     Okay.   And what was it that you sent him messages about?

[T.O.]: Oh, I sent them about I wanted to do it again or something like that.

[STATE]:     You wanted to do it again?

[T.O.]: Yes.

[STATE]: What was it you wanted to do again?

[T.O.]: Have sex.

[STATE]: But you said you didn't want to the first two times there in July and August.

[T.O.]: That, I don't know what I was thinking. I just thought about it and then I was thinking, that I might —

[STATE]: So you sent the message to him saying you wanted to have sex?

[T.O.]: Yeah.

{¶13} Julie Loyke, RN ("Nurse Loyke"), a pediatric nurse practitioner at Rainbow Babies and Children Hospital, testified she examined T.O. on September 28, 2017. Nurse Loyke stated that T.O. indicated Frost had inserted his penis into her vagina and that there was some bleeding afterward. Nurse Loyke stated her examination of T.O. produced no physical findings. Nurse Loyke stated that 95 percent of examinations taking place more than 96 hours after the sexual assault, would produce no physical findings.

{¶14} Sally McHugh ("McHugh"), an intake sexual abuse caseworker with CCDCFS, testified she conducted a home visit with T.O. in September 2017. McHugh stated she met with T.O. to assess the safety of the environment, to evaluate the need for medical or psychological treatment, and to make the necessary referrals.

{¶15} McHugh testified that T.O. indicated that on two occasions Frost had inserted his fingers into her vagina. McHugh made a referral to the Care Clinic and administratively disposed of the case as "sexual assault indicated." McHugh testified that T.O. had an open case

in Summit County Division of Children and Family Services, regarding her mother's issues with drugs and prostitution.

{¶16} At the end of the state's case, Frost moved for acquittal under Crim.R. 29(A). The trial court granted that motion with respect to Counts 1, 6, and 8, which were two rape charges and one gross sexual imposition charge, and the case proceeded with the remaining counts. On January 30, 2018, the jury returned guilty verdicts to the two counts of unlawful sexual conduct with a minor, with the further finding that Frost was ten or more years older than the victim.

{¶17} On February 26, 2018, the trial court sentenced Frost to 24 months in prison on each count, to be served consecutively, for a total of 48 months in prison. The trial court also classified Frost as a Tier II sex offender.

{¶18} Frost now appeals assigning the following errors for our review.

### Assignment of Error One

The State failed to present sufficient evidence to sustain a conviction against [Frost].

### Assignment of Error Two

[Frost's] convictions are against the manifest weight of the evidence.

### Assignment of Error Three

[Frost] was denied a fair trial by the witness'[s] improper comments while testifying, including [Frost's] guilt in violation of the Ohio Rules of Evidence and in violation of the Right to a Fair Trial and in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

{¶19} In the first assignment of error, Frost argues the state failed to present sufficient evidence to support the convictions.

### Sufficiency of Evidence

**{¶20}** Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶21}** The offense of unlawful sexual conduct with a minor requires the state to prove that the defendant engaged in sexual conduct with another, who is not the spouse of the offender, "when the offender knows the other person is 13 years of age or older but less than 16 years of age, or the offender is reckless in that regard." R.C. 2907.04(A).

**{¶22}** In the instant case, the evidence established that T.O. was 14 years old at the time of the offenses, and Frost was 28 years old. T.O. testified that in July 2017, Frost entered her bedroom, pulled down her pants and inserted his penis into her vagina. T.O. also testified that Frost repeated these actions in August 2017. T.O. testified that in both instances, she told Frost he needed to stop.

**{¶23}** In addition, T.O. testified about the text messages she sent to Frost's cell phone; text messages which were ultimately intercepted by Frost's girlfriend. As previously mentioned, in the text messages, T.O. inquired of Frost when they would have sex again. Further, both

Nurse Loyke and the intake case worker, McHugh, testified that T.O. indicated that she had been sexually assaulted by Frost.

{¶24} Based on the foregoing, we conclude there was sufficient evidence presented, which, if believed, would convince the average trier of fact that Frost was guilty beyond a reasonable doubt of unlawful sexual conduct with a minor.

{¶25} Accordingly, the first assignment of error is overruled.

Manifest Weight of Evidence

{¶26} In the second assignment of error, Frost argues his convictions were against the manifest weight of the evidence.

{¶27} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014-Ohio-5269, citing *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *Id.*, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶28} We note that in considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Becker*, 8th Dist. Cuyahoga No. 100524, 2014-Ohio-4565, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999. Therefore, we afford great deference to the factfinder's

determination of witness credibility. *State v. High*, 8th Dist. Cuyahoga No. 106198, 2018-Ohio-2236, citing *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 36.

{¶29} In the instant case, Frost contends that there was no corroborating evidence and no physical evidence of any sexual interaction, abuse, or misconduct.

{¶30} Despite Frost's contentions, Nurse Loyke testified that 95 percent of physical exams that take place 96 hours after the allegation of sexual assault would provide no physical evidence. Nurse Loyke examined T.O. on September 28, 2017, and T.O. testified the assaults took place in July and August 2017. Thus, an examination conducted a month after the second assault would provide no physical evidence.

{¶31} In addition, as discussed in the first assigned error, T.O.'s testimony about the two separate incidents, if believed, was sufficient to allow a reasonable jury to conclude that the complained of conduct occurred. Further, T.O.'s text messages, meant for Frost, which Monisha discovered, and which ultimately led to the instant charges, arguably could have been viewed by the jury as corroborating evidence of the sexual assaults.

{¶32} In light of the foregoing, when considering T.O.'s credibility and resolving conflicts in the evidence, including her inability to specify the dates, we do not find that the jury clearly lost its way in convicting Frost.

{¶33} Accordingly, the second assignment of error is overruled.

### Testimony

{¶34} In the third assignment of error, Frost argues that the trial court erred in permitting the state to introduce the testimony of McHugh that CCDCFS determined that a finding of abuse was "indicated."

**{¶35}** In *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), syllabus, the Ohio Supreme Court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Subsequently, the Ohio Supreme Court held that an expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence. *State v. Stowers*, 81 Ohio St.3d 260, 1998-Ohio-632, 690 N.E.2d 881. In *Stowers*, the court explained that "*Boston's* syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person)," and "does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the factfinder in assessing the child's veracity." *Id.* at 262-263.

**{¶36}** In *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, we addressed this issue and restated our holding in *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2015-Ohio-1446. In *Clark* we stated:

> This court has repeatedly recognized "that a social worker's interdepartmental determination of an allegation of abuse — such as, unsubstantiated, substantiated, or indicated — is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the alleged victim." *State v. Jackson*, 8th Dist. Cuyahoga No. 92531, 2010-Ohio-3080, ¶ 17, citing *State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d 1219 (8th Dist.1993); *State v. Sopko*, 8th Dist. Cuyahoga No. 90743, 2009-Ohio-140; *State v. Whitfield*, 8th Dist. Cuyahoga No. 89570, 2008-Ohio-1090; *State v. Simpson*, 8th Dist. Cuyahoga No. 88301, 2007-Ohio-4301. In *Smelcer*, this court noted that "the *Boston* decision did not prohibit an expert from giving his or her opinion on whether sexual abuse occurred." [*Smelcer*] at 121, citing *State v. Cornell*, 8th Dist. Cuyahoga No. 59365, 1991 Ohio App. LEXIS 5664 (Nov. 27, 1991).
>
> While the social worker's testimony reports the agency's finding that sexual abuse of the victim was indicated, it does not offer any opinions on who committed the abuse. At no point during the social worker's testimony did she testify that she believed Ferrell was the perpetrator or was the person who committed the abuse.

The social worker testified repeatedly that her purpose in interviewing the victim was to assess his or her safety. In doing so, the social worker referred to the accused as the "alleged perpetrator."

The social worker did not testify as to the veracity of the victim's accusations against Ferrell.

*Id.* at ¶ 15-17.

{¶37} Here, as in *Clark* and *Ferrell*, the social worker did not testify that she believed Frost committed the sexual assaults. McHugh testified the purpose of the home visit was to assess the safety of the environment, to evaluate the need for medical or psychological treatment, and to make the necessary referrals. McHugh explained that her disposition of the case as "indicated" was one of three administrative classifications used to track allegations within the state of Ohio, the other two being "substantiated" and "unsubstantiated." McHugh also explained that "indicated" means a consistent disclosure by the client. At no time did McHugh vouch for T.O.'s credibility. McHugh never testified that she believed T.O. was telling the truth.

{¶38} Arguably, McHugh's statement is a close call in relationship to other testimony we have reviewed along this vein. However, her explanation was constrained by the three administrative classifications available to CCDCFS and throughout the state of Ohio. It is important to note, Frost was found not guilty of two counts of rape, one count of GSI, and two counts of kidnapping, but guilty of two counts of unlawful sexual contact with a minor.

{¶39} Thus, under the specific circumstances, the perceived impact of McHugh's testimony that a finding of abuse was "indicated," should be viewed in relationship to the results at trial. It is quite possible the jury gave very little or no weight to McHugh's testimony regarding her determination of "indicated," but gave greater weight to the text messages T.O.

sent to Frost's cell phone. As previously discussed, the jury could have viewed the text messages as corroborating evidence of the sexual assaults alleged.

{¶40} In light of the foregoing, the trial court did not err in permitting McHugh to testify that her determination was "indicated."

{¶41} Accordingly, the third assignment of error is overruled.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR